UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RICKEY L. TOLBERT,                                No. 6:19-cv-06433-FPG
                                                  DECISION AND ORDER
                              Plaintiff,

        -vs-

ROCHESTER CITY SCHOOL DISTRICT,
RICHARD SMITH, DELE AKINNIY, and
GERALD CUTAIA,

                              Defendants.

_____

## INTRODUCTION

        Rickey L. Tolbert ("Tolbert" or "Plaintiff") instituted this action pursuant to 42 U.S.C. §

1983 against the Rochester City School District ("the District"), Richard Smith ("Smith"), Dele

Akinniy ("Akinniy"), and Gerald Cutaia ("Cutaia") (collectively, "Defendants"). Tolbert's

Complaint (ECF No. 1) alleges two causes of action: a First Amendment retaliation claim pursuant

to 42 U.S.C. § 1983 and a breach of contract claim pursuant to New York state law.  Defendants

have filed a Motion to Dismiss (ECF No. 3) pursuant to Federal Rule of Civil Procedure 12(b)(6)

("Rule 12(b)(6)"). Tolbert did not oppose the motion. For the reasons set forth below, Defendants'

Motion to Dismiss is granted in its entirety, and the Complaint is dismissed.

## BACKGROUND

        The facts are drawn from the Complaint ("Compl.") (ECF No. 1), unless otherwise noted.

Tolbert is a 60-year-old professionally trained chef who, at all times relevant to the Complaint,

and since August 29, 2006, was employed by the RCSD as a teacher of Culinary Arts in the Home

and Careers Instruction Department at John Marshall High School ("Marshall").  Compl. ¶¶ 8-9.

1

After Tolbert's original supervisor left the RCSD, Smith assumed the role of principal at Marshall and "dismantled the Culinary Arts program." When Tolbert complained, Smith retaliated against him. Tolbert consequently filed a lawsuit in the Western District of New York in 2009. *See Tolbert v. Smith, et al.*, No. 6:09-cv-06579-CJS-JWF (2009) ("*Tolbert I*"). Compl. ¶¶ 11-13.

In 2016, *Tolbert I* settled pursuant to a Confidential Settlement Agreement and Release ("Settlement Agreement") which bound the parties to refrain from publicly disclosing the terms of the Agreement and required the RCSD to establish a position of Executive Chef and employ Tolbert in such capacity. The Settlement Agreement did not state that Tolbert's employment in that position was contingent upon taking and passing a Civil Service examination. Compl. ¶¶ 14-18.

In 2016, Tolbert commenced the Executive Chef position in the RCSD's Food Services Division. Cutaia, the RCSD Assistant Director for Human Capital, told management and staff at the Food Services Division that Tolbert had previously sued the RCSD and had received a monetary settlement. He also disclosed that Tolbert was earning a salary of $75,000 per year. Cutaia's disclosures caused Tolbert to be disliked and resented by his co-workers, who refused to co-operate with him. *See* Compl. ¶¶ 18, 21-24.

On unspecified dates, the RCSD retaliated against Tolbert by refusing to provide him the tools and equipment necessary for him to properly perform his job, such as a work cell phone, business cards and a mailbox, all of which were given to other supervisors after the 2016 settlement. Compl. ¶ 26. In addition, Akinniy, Tolbert's supervisor, denied him tools such as a baker's chair, which meant he had to sit on "blue bins." He was subjected to criticism for sitting on blue bins, although other employees sat on blue bins and were not criticized. *Id.* ¶ 33. Akinniy also removed duties from the list of "duties and responsibilities" listed in the Executive Chef job

description and allowed several of Tolbert's recipes to be changed without consulting him. *Id.* ¶ 36.

On January 1, 2018, Tolbert discovered that his office had been taken away and his desk moved to a storage location. *Id.* ¶ 37.

On an unspecified date, Tolbert reported to Akinniy that there was a "sexual harassment problem in the Central Kitchen." *Id.* ¶ 38. Akinniy retaliated against Tolbert by refusing to permit Tolbert to attend "state-wide food events, such as the food show, nutrition seminar or Food Conference in Syracuse." *Id.* ¶¶ 39-40.

In January of 2018, Cutaia advised Tolbert he would have to take and pass the Civil Service examination in order to remain employed in the Executive Chef position, despite the fact that the Settlement Agreement did not contain such a condition on Tolbert's employment. Tolbert agreed to take the exam but was prevented from taking the examination due to illness. *See id.* ¶¶ 41-43.

On unspecified dates, Cutaia told Tolbert that the Civil Service Commission would not provide a makeup exam since "the list is already out" and that only a military excuse would be accepted as a reason for not taking the examination. *Id.* ¶¶ 45, 50.

On January 26, 2018, Tolbert was informed that RCSD was terminating his employment from its Food Services Division. *Id.* ¶ 51.

On March 9, 2018, Tolbert was advised by Civil Service that he could take a make-up test on another date if he provided a doctor's note stating that he was ill on the day of the examination. Tolbert obtained a doctor's note and mailed it to Civil Service, which later notified him that it had

not received the letter. Tolbert gave the letter[1] to Cutaia to have it transmitted to Civil Service. *See* Compl. ¶¶ 46-49.

Tolbert filed this lawsuit on June 13, 2019. In lieu of answering the Complaint, Defendants moved to dismiss pursuant to Rule 12(b)(6). Tolbert sought and was granted four extensions of time to file opposition papers. ECF Nos. 4-7. The most recent deadline for his response was March 23, 2020. However, he did not file anything by that date. The Motion to Dismiss was submitted without oral argument on March 24, 2020. ECF No. 7.

## RULE 12(b)(6) STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" announced by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth and are thus not sufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* at 679. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

---

[1] It is unclear if there are two letters, one of which Tolbert mailed and one of which he gave to Cutaia to mail; or if there was just one letter which Tolbert gave to Cutaia to mail.

A court's review under Rule 12(b)(6) "is generally limited to the facts and allegations that are contained in the complaint and in any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (citations omitted). When determining whether materials "were integral to [a plaintiff]'s complaint, a necessary prerequisite for that exception is that the 'plaintiff[ ] *rel[y]* on the terms and effect of [the] document in drafting the complaint . . . ; mere notice or possession is not enough.'" *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006) (quoting *Chambers*, 282 F.3d at 153; first alteration added; emphasis and ellipsis in original). "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason— usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Id.* at 157 (citation omitted); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016). "The exception thus prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting." *Id.* (citation omitted). If material is "not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Nicosia*, 834 F.3d at 231 (quoting Fed. R. Civ. P. 12(d)).

The Court "may also look to public records, including complaints filed in state court, in deciding a motion to dismiss." *Blue Tree Hotels Inv. (Canada), Ltd.*, 369 F.3d at 217 (citation omitted). "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and

related filings." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998); *accord Global Network Commc'ns, Inc.*, 458 F.3d at 157.

In support of their Motion to Dismiss, Defendants have submitted several documents extraneous to the Complaint, docketed at ECF Nos. 3-2 to 3-4.

- ECF No. 3-2 consists of (i) excerpts from RCSD Board Meetings dated January 28, 2016; March 20, 2018; June 20, 2019; (ii) a letter from Cutaia to Tolbert dated March 8, 2018, indicating that the Monroe County Civil Service requested he be removed from the Executive Chef position due to his name not appearing on the most recent Civil Service list and offering him a position of employment as a Cook; the letter was signed and dated by Tolbert on March 14, 2018; (iii) e-mails among Cutaia and other RCSD employee's regarding Tolbert's failure to appear for the Executive Chef Civil Service examination in October 2017; (iv) a New Hire Form dated October 30, 2015, indicating that Tolbert's Executive Chef appointment, effective January 29, 2016, was full-time, competitive, and provisional; and (v) a Civil Service examination application signed and dated by Tolbert on September 14, 2015.

- ECF No. 3-3 is a copy of the Settlement Agreement.

- ECF No. 3-4 is a copy  the list of applicants and their scores for the Executive Chef Civil Service examination given on October 28, 2017.

Defendants only address the public records exception with regard to the RCSD Board meeting minutes (ECF No. 3-2). *See* Defendants' Memorandum of Law ("Defs' Mem.") (ECF No. 3-5) at 6; Declaration of Alison Moyer ("Moyer Decl.") (ECF No. 3-1) ¶¶ 10, 12 (asserting that the documents attached as ECF No. 3-2 are public records).  They do not address whether any of the other documents they submitted qualify as public records or material integral to the Complaint.

Courts in this Circuit have found that meeting minutes of local boards and administrative bodies generally qualify as public records. *Croci v. Town of Haverstraw*, 175 F. Supp.3d 373, 381–82 (S.D.N.Y. 2016) (citing *Schubert v. City of Rye*, 775 F. Supp.2d 689, 696 n. 3 (S.D.N.Y. 2011) (noting that "the minutes and recordings of the City Council meetings are matters of public record and therefore are the types of materials of which a court may take judicial notice," but adding that

"the [c]ourt [would] consider these materials for the limit[ed] purposes of determining the fact of the meetings and the actions taken by the relevant parties, not for the truth of any statements made during these proceedings"); collecting cases). The Court finds that the RCSD Board Meeting minutes, which are available at https://www.rcsdk12.org/Page/110, fall within the public records exception. However, that does not mean that the Court may take as true any statement found in these public documents. *See Glob. Network Commc'ns, Inc.*, 458 F.3d at 157 ("[A]lthough [a] final determination [by a New York City administrative body] and [the] testimony [of the president and sole shareholder of the plaintiff company] may be public records of which a court may take judicial notice, it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion.") (internal quotation marks omitted).

Here, Defendants clearly intend the Court to rely on the RCSD Board meeting minutes not simply to establish their existence but as evidence that Tolbert's retaliation claim fails as a matter of law because the RCSD "was required to reassign him from the Executive Chef position, a competitive civil service position, to a Cook position, which is non-competitive, because of plaintiff's failure to take the Monroe County Civil Service examination." Defs' Mem. at 5-6. The Court finds that reliance on the RCSD Board meeting minutes for the purpose urged by Defendants is inappropriate under the judicial notice exception. *See Glob. Network Commc'ns, Inc.*, 458 F.3d at 157 ("Here, it is clear that the extraneous documents were used not to establish their existence, but rather to provide the reasoned basis for the court's conclusion that 'the record shows that Global cannot be expected to pay its obligations to the City in a timely or honest manner.' Analysis of such material was therefore not appropriate under the judicial notice exception to the conversion requirement." (internal citation omitted)).

The only other document the Court will consider in deciding the Motion to Dismiss is the Settlement Agreement (ECF No. 3-3), as Tolbert clearly relied on its terms in drafting his Complaint. *See*, *e.g.*, Compl. ¶¶ 14-18.

## DISCUSSION

## I. First Cause of Action: First Amendment Retaliation Under 42 U.S.C. § 1983

To establish a retaliation claim under 42 U.S.C. § 1983 ("§ 1983") in violation of a public employee's First Amendment rights, the plaintiff must show that: "(1) his or her speech was constitutionally protected; (2) he or she suffered an adverse employment action; and (3) a causal connection exists between the speech and the adverse employment action." *Washington v. Cnty. of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004). "It is established law in this Circuit that, '[r]egardless of the factual context, [courts] have required a plaintiff alleging retaliation to establish speech protected by the First Amendment.'" *Sousa v. Roque*, 578 F.3d 164, 169–70 (2d Cir. 2009) (quoting *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008); first alteration in original).

To assess whether a plaintiff's speech was constitutionally protected, the Court must determine "whether [he] spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (citation omitted). In *Garcetti*, the Supreme Court "parsed the first of the above 'two inquiries' into separate questions as to (1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke 'as a citizen' rather than solely as an employee." *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011) (quoting *Garcetti*, 547 U.S. at 420–22, 424). "If the court determines that the plaintiff either did not speak as a citizen or did not speak on a matter of public concern, 'the employee has no First Amendment cause of

8

action based on his or her employer's reaction to the speech.'" *Sousa*, 578 F.3d at 170 (quoting *Garcetti*, 547 U.S. at 418). "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide. . . ." *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir. 1999). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. at 138, 147-48 (1983).

The Complaint mentions two instances of speech by Tolbert for which he allegedly suffered retaliatory measures by Defendants. The first is his filing of *Tolbert I* in 2009; the second is his complaint to his supervisor, Akinniy, about a "sexual harassment problem in the Central Kitchen." The Court analyzes each in turn.

### A. The Filing of *Tolbert I* as Protected Speech

#### 1. Timeliness

Defendants argues that a retaliation claim based on *Tolbert I* being the protected speech is untimely because that lawsuit was filed in 2009. In other words, Defendants contend that Tolbert's retaliation claims accrued upon his filing of the earlier lawsuit. The Court disagrees with this proposition, as discussed below.

"The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law." *Shomo v. City of N.Y.*, 579 F.3d 176, 181 (2d Cir. 2009). Thus, for Tolbert's claim for retaliation in violation of his First Amendment rights to be timely, his Complaint must have been filed within three years of the accrual of his claim. "While the applicable statute of limitations in a § 1983 case is determined by state law, "the accrual date of a § 1983 cause of action is a question of federal

law that is not resolved by reference to state law.'" *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).

A plaintiff's claims do not accrue until he "knows or has reason to know of the injury which is the basis of his action." *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994) (citations omitted). Thus, for a First Amendment retaliation claim, the "point of accrual . . . is 'not when plaintiff utters the alleged protected speech, but rather when he suffers retaliatory action as a result of that speech.'" *Hughes v. Anderson*, No. CV09-4042 ADS WDW, 2012 WL 3062155, at *7 (E.D.N.Y. May 31, 2012); *see also Morin v. Tormey*, 620 F. Supp.2d 353, 364 (N.D.N.Y. 2009).

### 2. Was *Tolbert I* Speech by a Private Citizen on a Matter of Public Concern?

Defendants argue that Tolbert's earlier lawsuit does not constitute protected speech because the lawsuit alleged discriminatory conduct only with regard to Tolbert individually and thus did not constitute speech by a private citizen on a matter of public concern. The Court therefore turns to the questions of whether Tolbert spoke as a citizen or an employee when filing the earlier lawsuit, and whether the earlier lawsuit addressed a matter of public concern. *See Sousa*, 578 F.3d at 170 (citing *Garcetti*, 547 U.S. at 418).

With regard to the citizen-versus-employee question, the Supreme Court has explained that this inquiry "sometimes has proved difficult[,]" which "is the necessary product of 'the enormous variety of fact situations in which critical statements by teachers and other public employees may be thought by their superiors . . . to furnish grounds for dismissal.'" *Garcetti*, 547 U.S. at 418 (quotation omitted). Because the inquiry tends to be fact-bound, courts sometimes defer resolution of this question. *See*, *e.g.*, *Ruotolo v. City of N.Y.*, 514 F.3d 184, 189 (2d Cir. 2008) (district court held that plaintiff's lawsuit constituted speech as a private citizen; circuit stated it "need not decide

whether Ruotolo's lawsuit amounts to speech by a 'citizen' rather than by a 'public employee' within the meaning of *Garcetti*: a simpler ground is available because in any event that speech is not 'on a matter of public concern'") (quotation omitted); *Ross v. New York City Dep't of Educ.*, 935 F. Supp. 2d 508, 523 (E.D.N.Y. 2013) (assuming without deciding that plaintiff who filed lawsuit "did not make th[e] speech 'pursuant to' his official duties (but spoke as a private citizen)," where "it [was] clear that the lawsuit does not relate to a matter of 'public concern'") (quoting *Ruotolo*, 514 F.3d at 188; footnote omitted); *Smith v. New York City Dep't of Educ.*, No. 09-cv-9256, 2011 WL 5118797, *7 (S.D.N.Y. Oct. 28, 2011) (explaining that "[a]ny reliable conclusion [as to whether speech was protected] would require evidence of precisely what was said and to whom it was communicated"). The Court will follow that course here and will assume without deciding that Tolbert was speaking as a private citizen when he filed his previous lawsuit.

To make the "public concern" determination, the Court has reviewed the allegations set forth in the complaint filed by Tolbert's retained counsel in *Tolbert I*. There, Tolbert's allegations of wrongdoing were attributed primarily to Smith, who is also a defendant in this action. Tolbert alleged that Smith, upon taking over as principal at Marshall, "began dismantling the culinary arts program as it had developed under [his predecessor]'s leadership;" Complaint ¶ 19, ECF No. 1, *Tolbert I*; "eliminated the budget for the culinary arts program[;]" *id.* ¶ 24; and "refused to have the janitorial staff clean the culinary arts room, as a result of which a serious rodent problem developed in the fall of 2008." *Id.* In addition, Tolbert alleged that "[o]n numerous occasions, not only in the context of the culinary arts program, but also regarding other topics, defendant made statements to John Marshall High School's students that conveyed racist and discriminatory attitudes." *Id.*

"Generally, speech on 'any matter of political, social, or other concern to the community is protected by the First Amendment.'" *Cotarelo v. Vill. of Sleepy Hollow Police Dep't*, 460 F.3d 247, 252 (2d Cir. 2006) (quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) (finding that comments of police officers on crime rates, police staffing, equipment shortages and budgetary matters were of public concern) (quotation marks and citation omitted)) . And, the Second Circuit has "repeatedly held[,] . . . discrimination in a government workplace is a matter of public concern." *Id.* (citing *Konits v. Valley Stream Cent. High Sch. Dist.*, 394 F.3d 121, 125 (2d Cir. 2005) (citing *Feingold v. N.Y.*, 366 F.3d 138, 160 (2d Cir. 2004); *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 383 (2d Cir. 2003)). In light of this authority, some of the allegations in *Tolbert I* pertain to broader concerns beyond Tolbert's personal interests, such as the elimination of racially discriminatory attitudes towards and treatment of individuals at Marshall, a public high school; the safety and health of students, staff, and visitors to the school; and the educational needs of the student body.

However, the gravamen of *Tolbert I*'s Complaint is Smith's wrongful treatment of Tolbert personally and his role in the decision to deny Tolbert tenure. This is illustrated by the bulk of the Complaint's allegations. For instance, Tolbert asserted that when Smith took over as principal at Marshall, he discontinued providing Tolbert with a paraprofessional teaching assistant and increased the class size, which made hands-on instruction impossible and made his job more difficult. Smith drastically cut the culinary arts program budget and asked Tolbert to develop a new curriculum considering those cutbacks. However, Smith refused to implement the curriculum Tolbert prepared. According to Tolbert, RCSD policy and practice was to provide third-year probationary teachers with counseling and assistance in connection with the tenure process. Noneheless, during the 2008-2009 academic year, Smith and his administration provided him no

counseling and took no remedial steps to assist him in obtaining tenure. Then, in August 2009, the Superintendent made a formal recommendation to the RCSD Board of Education to terminate Tolbert's employment. Though the Board of Education did not approve the recommendation, the Superintendent retained exclusive rights to grant tenure. Thus, Tolbert was denied tenure and advised that his employment with the RCSD would terminate effective September 1, 2009. *See* Compl. ¶¶ 19, 26-31, ECF No. 1, *Tolbert I*. The only two causes of action asserted in *Tolbert I* were discriminatory interference with a contractual relationship under 42 U.S.C. § 1981 and defamation. *See* Compl. ¶¶ 38-47, ECF No. 1, *Tolbert I*.

The Court concludes that this case is unlike *Cotarelo*, 460 F.3d 247, where the underlying conduct involved complaints by police officers concerning "the growing trend in the [Police Department] regarding bigotry and discrimination towards the Spanish-speaking police officers," and the plaintiff cited a number of specific discriminatory comments and conduct against various different Spanish-speaking officers. *Id.* at 250 (alteration in original). Likewise, this case is distinguishable from *Konits*, 394 F.3d 121, where the lawsuit at issue was "predicated on speech about gender discrimination against a fellow employee." *Id.* at 126. In contrast, *Tolbert I* did not cite any specific instances of discrimination or retaliation suffered by anyone other than Tolbert himself. And, the only relief sought in *Tolbert I* consisted of compensatory and punitive damages to make Tolbert whole. Significantly, Tolbert has failed to submit any opposition to Defendants' Motion to Dismiss and thus has not contested Defendants' characterization of his previous lawsuit. Notwithstanding the general, non-specific references in *Tolbert I* to Smith's allegedly racist attitude towards students, the Court finds that the previous lawsuit was not designed to bring to light district-wide discriminatory practices or to address the impact of such practices on the high school's environment. *See, e.g., Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993)

(finding that the plaintiff failed to state a First Amendment claim based on her filing of a lawsuit where there was "no indication that the plaintiff 'wanted to debate issues of sex discrimination,' that her suit sought 'relief against pervasive or systemic misconduct by a public agency or public officials,' or that her suit was 'part of an overall effort . . . to correct allegedly unlawful practices or bring them to public attention'") (quoting *Yatvin v. Madison Metro. Sch. Dist.*, 840 F.2d 412, 420 (7th Cir. 1988)); *see also Huth v. Haslun*, 598 F.3d 70, 74 (2d Cir. 2010) (finding that plaintiff's "present lawsuit, asserting claims for monetary and punitive damages, does not qualify as speech 'on a matter of public concern'" where complaint "alleged only that defendants retaliated against her for specific statements she made to her supervisor and for the union activities of [a coworker]"; finding that "[m]uch like other public employee speech that we have held not to be protected from retaliation by the First Amendment, Huth's lawsuit was 'personal in nature and generally related to her own situation'" (internal and other quotations omitted)).

Because the Court finds that Tolbert has failed to plausibly allege the required "public concern" element, it is unnecessary to address the other elements of a First Amendment retaliation claim.

## B. The Report of the "Sexual Harassment Problem"

The other instance of speech referenced in the instant Complaint is Tolbert's report, on an unspecified date, to Akinniy that there was a sexual harassment problem in the Central Kitchen. Tolbert alleges that instead of remedying the sexual harassment problem, Akinniy retaliated against him by denying permission to attend "state-wide food events, such as the food show, nutrition seminar or Food Conference in Syracuse." Compl. ¶¶ 38-40.

### 1. Was the Report Speech by a Private Citizen on a Matter of Public Concern?

The Court first will analyze whether Tolbert was speaking as an employee or private citizen in making this complaint to Akinniy, who he identifies as his immediate supervisor. *See* Compl. ¶ 27. On this question, the "general principle running through" circuit court cases applying *Garcetti* "is that, when a public employee airs a complaint or grievance, or expresses concern about misconduct, to his or her immediate supervisor or pursuant to a clear duty to report imposed by law or employer policy, he or she is speaking as an employee and not as a citizen; in such cases, the First Amendment does not protect the employee's speech from discipline or retaliation by the employer." *Weintraub v. Bd. of Educ. of City of N.Y.*, 489 F. Supp.2d 209, 219 (E.D.N.Y. 2007), *aff'd sub nom. Weintraub v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 593 F.3d 196 (2d Cir. 2010). The Second Circuit has clarified that "speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." *Weintraub*, 593 F.3d at 203.

Here, Tolbert expressed his concern on one occasion to his direct supervisor, and there is no suggestion that he went outside of the "chain of command" or repeated his comments in a public forum. The Court accordingly concludes that Tolbert has failed to plausibly allege that he was speaking as a private citizen about the "sexual harassment problem" when he talked to Akinniy. *See*, *e.g.*, *Massaro v. New York City Dep't of Educ.*, 481 F. App'x 653, 655–56 (2d Cir. 2012) (summary order) (holding that district court correctly concluded that "Massaro spoke as an employee rather than a private citizen is supported by the facts that she aired her complaints only to several school administrators rather than to the public, and that most of those complaints were made in the context of internal safety and medical absence-related forms (at least one of which was marked 'confidential')"); *Burns v. Cook*, 458 F.Supp.2d 29, 40 (N.D.N.Y. 2006) (concluding speech was not protected where "[p]laintiff communicated this speech in a private and direct matter

with no apparent intention of voicing her discontent to the public at large"); *McGuire v. City of N.Y.*, No. 12-CV-814 (NGG) (PK), 2015 WL 8489962, at *7 (E.D.N.Y. Dec. 8, 2015) ("[The plaintiff's] speech was made through official channels. Courts in this circuit have found, that where an employee speaks only through official channels, rather than publicly, they are more likely to be speaking as an employee."); *Anglisano v. N.Y. City Dep't of Educ.*, No. 14-CV-3677 (SLT) (SMG), 2015 WL 5821786, at *7 (E.D.N.Y. Sept. 30, 2015) ("While plaintiff asserts that she was acting as a 'private citizen,' the fact that she spoke only to her direct supervisor and to the principal belies this conclusory assertion.").

The sole allegations in the Complaint regarding the report of the sexual harassment problem lead to one conclusion, namely, that Tolbert spoke to Akinniy as an employee rather than a private citizen. Therefore, the Court finds that Tolbert has not plausibly alleged the "private citizen" element of a First Amendment retaliation claim. In light of this conclusion, it is unnecessary to consider whether the speech was on a matter of public concern.

## 2. Has Plaintiff Plausibly Alleged an Adverse Employment Action?

While Tolbert's failure to allege speech by a private citizen is a sufficient basis to dismiss the claim based on the report to Akinniy, the Court also finds that Tolbert has failed to plausibly allege an adverse employment action for purposes of a First Amendment retaliation claim. As an initial matter, the Court must define the universe of adverse employment actions that could be causally related to Tolbert's report of a sexual harassment problem to Akinniy. As discussed further below, the Court concludes that the only employment actions relevant to this instance of speech are those set forth in Paragraphs 38 to 40 of the Complaint, which are the only three paragraphs concerning the report to Akinniy.

The Court notes that Tolbert alleges other examples of adverse employment actions, i.e., denial of a work cell phone, business cards, and a mailbox; denial of a baker's chair to use while preparing food in the kitchen; the taking away of his office and the moving of his desk to a storage location; unspecified incidents of "belittl[ing]" and "undermin[ing] his authority;" the removal of certain job responsibilities; the alteration of several of his recipes; the requirement that he take the Civil Service examination; and the termination of his employment for failing to take that examination. *See* Compl. ¶¶ 26-37; 51-52. Except for the allegations regarding the Civil Service Examination and his termination, Tolbert's placement of the allegations in the Complaint indicates that they apparently *preceded* Tolbert's complaint to Akinniy about sexual harassment. Therefore, the instances of retaliation detailed in these allegations cannot have been causally related to the sexual harassment report.

Read in context—all of the allegations, including those pertaining to the Civil Service examination and his termination—appear to be related to *Tolbert I* and the disclosures by Smith and Cutaia about the terms of the Settlement Agreement. For instance, after asserting that Cutaia's statements about Tolbert's salary bred resentment among his co-workers, Tolbert next alleges that the RCSD retaliated against him by refusing to provide him the tools and equipment necessary for him to properly perform his job, such as a cell phone, business cards, and a mailbox, which were provided to other supervisors after the Settlement Agreement was reached. *See* Compl. ¶¶ 26-27. As the Court has already found, *Tolbert I* does not constitute protected speech, and any adverse actions taken in response to Tolbert's filing of that lawsuit are not actionable. *See Sousa*, 578 F.3d at 170.

Tolbert also specifically draws a causal connection between his report of the "sexual harassment problem," Compl. ¶ 38, and Akinniy's retaliatory treatment, by alleging that Akinniy

retaliated against Tolbert instead of addressing the problem. *Id.* ¶ 39. Tolbert then lists the examples of retaliation that occurred as a result of his reporting the sexual harassment problem, i.e., the denial of permission to attend certain culinary events. *Id.* ¶ 40. These allegations thus describe an instance of speech, separate and apart from *Tolbert I*, for which Tolbert was allegedly subjected to retaliatory treatment. The Court accordingly considers only the instances of retaliation asserted in Paragraph 40 of the Complaint as relating to Tolbert's report of sexual harassment to Akinniy.

The standard for judging whether an employment action is adverse for purposes of a First Amendment claim entails determining whether the action in question would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012). "Under this 'objective' standard, an adverse action must be more than '*de minimis*' to support a First Amendment retaliation claim." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 273 (2d Cir. 2011) (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 226 (2d Cir. 2006)). "The list of adverse actions has included harsh measures, such as discharge, refusal to hire, refusal to promote, reduction in pay, and reprimand, as well as some lesser sanctions, such as failure to process a teacher's insurance form, demotion, reassignment to a place that aggravated physical disabilities, and express accusations of lying." *Wrobel*, 692 F.3d at 31. Importantly, the "objective standard" requires the plaintiff to show that "the total circumstances of h[is] working environment changed to become unreasonably inferior and adverse when compared to a typical or normal, *not ideal or model*, workplace." *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002) (emphasis supplied); *accord Montero v. City of Yonkers, N.Y.*, 890 F.3d 386, 401 (2d Cir. 2018).

Tolbert does not allege that the denial of permission to attend the "food show, nutrition seminar or Food Conference in Syracuse" altered his working environment at all, much less in a manner that made it unreasonably adverse. Moreover, the Court finds that, under the applicable objective standard, these incidents caused no more than a *de minimis* impact on Tolbert's working environment and would not have deterred a similarly situated individual of ordinary firmness from exercising his constitutional rights. This conclusion is buttressed by comparing Tolbert's allegations to arguably more negative actions which courts in this Circuit have considered insufficiently serious. *See*, *e.g.*, *Dillon v. Morano*, 497 F.3d 247, 254 (2d Cir. 2007) (defendant's refusal to sign plaintiff's performance review, the transfer to a less prestigious unit, the assignment of menial tasks, and plaintiff's exclusion from certain meetings did not constitute adverse employment actions in First Amendment retaliation case); *Collymore v. City of N.Y.*, 767 F. App'x 42, 47 (2d Cir. 2019) (summary order) (plaintiff alleged that defendants "retaliated against her by attempting to bring disciplinary charges against her, scrutinizing her work, and denying her overtime requests when she exercised her First Amendment rights to report that [her supervisor] had violated the code of conduct"; circuit held that plaintiff's allegations of retaliatory conduct were "not 'more than *de minimis*,' and she ha[d] failed to state a plausible claim that 'a person of ordinary firmness' would be deterred from exercising her free speech rights") (quoting *Zelnik*, 464 F.3d at 226; internal quotation marks omitted in original); *Jackson v. Peekskill City Sch. Dist.*, 106 F. Supp. 3d 420, 429 (S.D.N.Y. 2015) (father of minor child did not sufficiently allege that former Superintendent's statement, that father, a teacher, was reassigned to home due to a pending disciplinary matter, constituted an adverse employment action because statement would not have deterred individual of ordinary firmness from continuing to pursue action; alleged retaliation was *de minimis* and not suitable for First Amendment claim).

In sum, the Court finds that the denial of permission to attend "state-wide food events" do not approach "the boundary of [employment actions] that are serious enough to dissuade a reasonable person from exercising her First Amendment rights." *Manon v. Pons*, 131 F. Supp.3d 219, 233 (S.D.N.Y. 2015) (citing *Faul v. Potter*, 355 F. App'x 527, 529–30 (2d Cir. 2009) (summary order)).

Because the Court has found that Tolbert has not plausibly stated the "private citizen" and "adverse employment action" elements, it need not consider the remaining elements of a First Amendment retaliation claim.

## II.     Second Cause of Action: Breach of Contract

For his second cause of action, Tolbert alleges that Defendants breached the Settlement Agreement by disclosing the terms of the Settlement Agreement to Tolbert's fellow employees and requiring him to take and pass the Civil Service Examination as a condition to remaining in the Executive Chef position, even though the Settlement Agreement "placed no such condition on his employment." Compl. ¶ 42.

"The district courts may decline to exercise supplemental jurisdiction over a claim . . . if," among other considerations, "the district court has dismissed all claims over which it has original jurisdiction. . . ." 28 U.S.C. § 1367(3)(c). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (citations and internal quotation marks omitted).

Because Tolbert's only federal claim is being dismissed, the lawsuit is in its early stages, and there no other factors favoring the retention of jurisdiction over the state law claim, the Court declines to exercise supplemental jurisdiction to address the breach of contract claim. *See One Communications Corp. v. J.P. Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims."). Accordingly, the breach of contract claim will be dismissed without prejudice. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.") (footnote and citation omitted).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 3) is **GRANTED**, and the Complaint (ECF No. 1) is **DISMISSED**. The first cause of action for First Amendment retaliation is **DISMISSED WITH PREJUDICE**. The second cause of action for breach of contract is **DISMISSED WITHOUT PREJUDICE**. The Clerk of Court is directed to close this case.

**SO ORDERED.**

_____
HON. FRANK P. GERACI, Jr.
United States District Judge

Dated: March 26, 2020
       Rochester, New York.